IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Robert Marberger, | ) | Case No.: 3:22-02375-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' MOTION TO EXCLUDE** |
| | ) | **REBECCA BAILEY AS AN EXPERT** |
| Jeremy R. Nivens and DZYK Transportation | ) | **IN THIS CASE** |
| Services, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Jeremy R. Nivens and DZYK Transportation Services, LLC hereby move before the Court for an Order excluding Plaintiff's retained life-care expert, Rebecca Bailey, as an expert at the trial of this case. Defense consulted with Plaintiff's counsel concerning the filing of this motion. However, Plaintiff's counsel has retained Rebecca Bailey, the subject of the motion, to testify as an expert and Plaintiff does not consent to her exclusion.

Because a full explanation of the motion as required by LOCAL CIV. RULE 7.05 (D.S.C.) is contained within this motion and a separate memorandum would serve no useful purpose, a separate memorandum of law does not accompany this Motion. See LOCAL CIV. RULE 7.04 (D.S.C.).

I.  **INTRODUCTION**

Plaintiff Robert Marberger filed this motor vehicle accident lawsuit in the Sumter County Court of Common Pleas against Defendants Jeremy R. Nivens, James Miller, and Cowan Equipment Leasing on June 22, 2022. The action was subsequently removed it to this Court. The Court has diversity jurisdiction over the matter under 28 U.S.C. §1332. Further, the pleadings were

amended and the current defendants are Jeremy R. Nivens and DZYK Transportation Services, LLC. Defendants now move to exclude Plaintiff's life-care expert.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed this lawsuit as a result of a September 9, 2021 accident on I-95 North in Sumter County. Amended Complaint [Doc. 42] ¶ 7. Plaintiff claims at the time of the subject crash, Defendant Nivens was operating a tractor trailer bearing D.T.S. Transportation, Inc., with the legal name of DZYK Transportation Services, LLC. Amended Complaint ¶ 15. Plaintiff claims Defendant Nivens caused his vehicle to strike Plaintiff's vehicle, resulting in bodily injuries to Plaintiff, and further that Defendant DZYK is vicariously liable for the actions of Nivens. Amended Complaint generally.

This matter was stayed due to bankruptcy on June 27, 2023 by Judge Wooten [Doc. 24]. It was then reassigned to Judge Lydon on January 9, 2024. The stay was lifted on June 3, 2024 [Doc 29]. Finally, it was reassigned to Judge Lewis on October 16, 2024. The Fifth Amended Scheduling Order [Doc. 76] provides a discovery deadline of February 28, 2025 and motions due by March 14, 2025.

## III. MOTION TO EXCLUDE

### A. Standard of Review

Federal Rule of Evidence 702 creates a "gatekeeping requirement" for the trial court to "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Pursuant to Rule 702, a witness may be qualified as an expert to provide opinion testimony when:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The purpose of this rule is to ensure "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" is presented in the courtroom. *Kumho*, 526 U.S. at 152.

When making determinations on the admissibility of an expert's testimony, the Court may consider the Supreme Court's following set of non-exclusive factors, commonly referred to as the *Daubert* factors:

> 1) "whether [the] theory or technique . . . can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; 3) "the known or potential rate of error" of a methodology and "the existence and maintenance of standards of controlling the technique's operation"; and 4) the general acceptance of the theory within the "relevant scientific community."

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-94 (1993). No single factor is determinative; the "inquiry is a 'flexible one,'" providing a trial court with "broad discretion in choosing which *Daubert* factors to apply and how to consider them." *Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019).

The Court's task is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The relevance inquiry requires an analysis of whether the expert opinions have "a valid scientific connection to the pertinent inquiry." *Belville*, 919 F.3d at 232. And, to be reliable, "expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

*B. Argument*

*1. Bailey Has Yet To Consult with Medical Doctors*

On October 22, 2024, Plaintiff disclosed his experts, including Southeastern Life Care Planning, LLC. [Doc. 59]. The *Preliminary* Life Care Plan Report (emphasis added) contained in the 61 pages produced by Plaintiff to Defendants that same day is dated October 21, 2024, and is authored by Rebecca Bailey. Bailey's expert testimony is the subject of Defendant's motion to exclude, as specific medical foundation for many of the items founds within the life-care plan was absent.

Bailey is a Registered Nurse and Life Care Planner, but has never been published. (Bailey Depo. P. 80, l. 18-19, Transcript attached as Exhibit) However, a Registered Nurse's scope of practice does not include prescriptive healthcare authority. A Registered Nurse's scope of practice includes implementing and monitoring the plan of care determined by a qualified healthcare provider who indeed does have prescriptive authority, e.g. a physician. Having a Life Care Planning Certification does not expand the Life Care Planner's professional scope of practice to include prescriptive healthcare authority. Bailey reached far beyond her professional scope of practice as a Registered Nurse when she attempted to independently develop the recommendations within the October 21, 2024 Preliminary Life Care Plan. Bailey also did not have her life care plan report peer reviewed by anyone. (Bailey Depo. P. 66, l. 5-7)

According to a primary life care planning treatise, Life Care Planning & Case Management Handbook (Fourth Edition, Page 12, and Fifth Edition, Page 29), the step-by-step procedures necessary for the development of the Life Care Plan require healthcare consultations to occur *even before* (emphasis added) the Life Care Planner can establish his/her preliminary life care planning

opinions. According to Bailey's Preliminary Life Care Plan, one consultation with a treating provider was completed; that was with Plaintiff's Ophthalmologist, Dr. DeStafeno. In her deposition, Bailey admitted she was not able to collaborate with Plaintiff's neurologist, Dr. Salama, or any other doctors, and that is why her report is preliminary. (Bailey Depo. P. 9, l. 1-9). Further, Bailey did not speak with any physical therapists about this case. (Bailey Depo. P. 25, l. 8-10). In fact, Bailey never met Plaintiff in person "but plan[s] to do so if [ ] asked to update this report and it moves towards trial." (Bailey Depo. P. 25, l. 17-21). Bailey also testified that if she is asked to update the report in the future, then she will do her "best to speak with the oncologist and primary care and neurology and any other provider that is brought in on the case, as well." (Bailey Depo. P. 38, l. 1-5). This case is already moving towards trial though, and apart from Dr. DeStafeno's specific recommendations for Plaintiff, Bailey lacks complete medical foundation for the other medical treatment, as recommended by her in Preliminary Life Care Plan, including, but not limited to:

- Physical Medicine & Rehabilitation Consult and Office Visits
- Neurology and Neuropsychology Office Visits
- Orthopedic Consult, Office Visits (Neck, Back, and Knees)
- X-Rays, MRIs, and CT Scans
- Prescriptions
- Physical Therapy Evaluations and Sessions
- Physical Therapy Sessions
- Dentures
- Remote Telecaregiving Home Monitoring Installation, Rental, and Monitoring
- Nurse Case Manager
- Occupational Therapy Home Evaluation
- Driving Evaluation

As Bailey admitted in her deposition testimony: "They're not orders. They're recommendations, which because this is a preliminary report, in the future, I plan to have –

recommend solid collaboration for those recommendations…. "I'm unable to prescribe or order. These are recommendations…" (Bailey Depo. P. 43, L.6 – P. 44, l. 11)

### *2. Present Value of the Life Care Plan*

Bailey also identified total lifetime costs within her Preliminary Life Care Plan. It is beyond the scope of professional practice for a Registered Nurse to include economic calculations and define present value calculations. The displayed total lifetime costs did not incorporate present value calculations, as required by published life care planning treatise guidelines. Bailey is not an economist nor has an economist looked at her report. (Bailey Depo. P. 32, l. 13-18). Plaintiff has not identified an economist as one of his experts.

### *3. Plaintiff's Life Expectancy*

Bailey also used the life expectancy table for Plaintiff, but she is 1) is not a life expectancy expect and 2) she did not consider Plaintiff's individualized circumstances that may impact his life expectancy, including his cancer or Hepatitis B core AB-positive status. (Bailey Depo. P. 46, l. 5-12). Therefore, this is not reflective of an individualized assessment and is professionally inappropriate from a life care planning perspective. In fact, Bailey agreed she is unable to say within the scope of her expertise what Plaintiff's life expectancy is. (Bailey Depo. P. 47, l. 2-4). Plaintiff has yet to identify as life expectancy expert in this case.

### IV.    CONCLUSION

As Bailey testified: "I won't prescribe them. I can't prescribe them.I can't order them. Those comes from physicians." (Bailey Depo. P. 44, l. 19-21). The only medical treatments Plaintiff has been prescribed are eye exams and a followup with the primary care and "that's why this is a preliminary report." (Bailey Depo. P. 63, l. 13-17). Yet, Bailey did not - and still has not - consult with any of these physicians (other than Plaintiff's Ophthalmologist). Bailey was not aware of any

doctors who have prescribed a follow up x-rays, MRIs, or CT scans, and therefore she should be excluded as an expert in this case. Further, Plaintiff has still yet to produce a "final" Life Care Plan from Bailey. However, as of February 21, 2025, when Bailey was deposed, she had not been asked to update, revise, or finalize her Life Care Plan for Plaintiff. Bailey said herself: she does not know what the future total lifetime costs would be, as this was a prelimary report. (Bailey Depo. P. 68, l. 3-8). Plaintiff's expert disclosure deadline however was October 30, 2024. Therefore, any revised or final Life Care Plan from Bailey would be untimely and prejudicial to Defendants. As seen, Bailey's opinions in this case (other than the ophthalmology treatment) are not reliable. As such, Bailey should be excluded as an expert in this case.

Respectfully submitted,

Sweeny, Wingate & Barrow, P.A.

s/ Aaron Hayes
Aaron Hayes, Fed. I.D. No. 10736
Post Office Box 12129
Columbia, SC 29211
(803) 256-2233
ATTORNEYS FOR NIVENS

McAngus Goudelock and Courie

s/ Adam Ribock
Adam Ribock, Fed, I.D. No. 12287
1320 Main Street, 10th Fl.
Columbia, SC 29201
(803) 779-2300
ATTORNEYS FOR DZYK