Report of the Expert Review and Opinion of Christopher Watson, MD FACS of the facts of the case:

Robert Marberger v. Jeremy R. Nivens, James Miller and Cowan Equipment Leasing
Date of Loss: 09Sep2021
Claim No.: 61A216364

I, Christopher Watson, MD FACS, have been continuously licensed by the appropriate regulatory agency to practice medicine and surgery in the State of South Carolina since 2003. Since 2008, I have been board certified by the American Board of Surgery in General Surgery, and since 2010, I have also been certified in Surgical Critical Care. I have been continuously employed as a full-time Trauma Surgeon since 2007. Additionally, I have an academic appointment as Associate Professor of Clinical Surgery at the University of South Carolina School of Medicine in Columbia, SC.

I have been actively engaged in the practice of trauma since 2001 at Prisma Health Richland (formerly known as Palmetto Health Richland, formerly known as Richland Memorial Hospital), the busiest Level 1 Trauma Center in the State of South Carolina. During this time, I have evaluated and treated many thousands of blunt traumatic injuries, including those as a result of motor vehicle collisions. As a necessary part of this evaluation and management, I compare the specific mechanism of injury with the specific injury patterns sustained by the patient.

Furthermore, I have reviewed a Juris Medicus compilation of the documents listed:

1. 09Sep2021: South Carolina Peace Officer's Report
2. 09Sep2021: Clarendon County Fire/Rescue – EMS Report
3. 09Sep2021: McLeod Health Clarendon Hospital Medical Records
4. 09Sep2021: Adams Life Link Ambulance – EMS Report
5. 09-24Sep2021: McLeod Regional Medical Center Medical Records
6. 29Sep2021, 01Nov2021, 27Dec2021, 11Jan2022: Matthew Molnar, M.D.--Penn Medicine Lancaster General Health-Family Medicine Clinic
7. 06Oct2021, 12Oct2021, 18Oct2021, 26Oct2021, 09Nov2021, 06Jan2022, 07Feb2022, 05May2022, 15Sep2023, 21Dec2023: Brian Shafer, M.D. and John DeStafeno—Chester County Eye Care

CW 10JAN25

8. 02Nov2021 to 25Jan2022: Penn Medicine Lancaster General Health – Initial Physical Therapy Consultation
9. 30Nov2021, 03Feb2022: Hany Salama, MD – Penn Medicine Lancaster General Health
10. 08Dec202, 03Feb2022, 04Mar2022, 19Jul2023: Ignatius Hneleski, MD – Vistarr Laser & Vision Centers
11. 19Jan2022: MRI of abdomen – Chester County Hospital
12. 21Jan2022: Ignatius Hneleski, MD – Vision One Laser and Surgery Center
13. 02May2022, 16May2022, 07Jun2022, 30Jun2022, 16Aug2022, 10Oct2022, 21Nov2022, 30Jan2023, 13Feb2023, 13Mar2023, 08May2023, 17Jul2023, 31Jul2023: Daniel Altman, MD – Penn Health Hematology
14. Photo of the of Mr. Marberger's flat-bed truck.

After having reviewed the synthesis of the previously listed documentation, I have formed an opinion of the case based on my experience as a Trauma Surgeon. My CV is attached as reference of my current and past experience and expertise.

Mr. Marberger was driving a flat-bed truck at a high rate of speed, more likely than not, impaired by the use of marijuana or some other THC-containing substance, which was demonstrated in a routine urine sample obtained as part of the trauma evaluation at McLeod Health Clarendon Hospital paired with the patient's history of smoking marijuana three times daily. Since there were no less than three different descriptions of the events leading to the motor vehicle collision, I have come to my understanding of the mechanism of injury by synthesizing the data provided by the South Carolina's Peace Officers Report with included photos and a separate photo of the rear of Mr. Marberger's truck provided by Mr. Aaron Hayes. Mr. Marberger's truck sustained a front impact collision with a larger semi-truck which was also moving at highway speeds, although slower than the speed at which Mr. Marberger was travelling. Mr. Marberger's truck sustained moderate damage to the front and engine compartment while the passenger compartment was spared, notably without windshield damage. This led to a deceleration of Mr. Marberger's truck to the speed at which the larger truck was travelling. Apparently, at some point a third vehicle made contact with Mr. Marberger's truck from the rear and led to very minimal damage to the passenger side of the flat bed of Mr. Marberger's truck. Also notable was the lack of rear glass damage on Mr. Marberger's vehicle. This impact would have caused a minor angular acceleration of Mr. Marberger's vehicle forward and to towards the driver's side.

*CMW 10JAN25*

The initial impact of the flat-bed truck with the rear of the semi-truck led to a deceleration of Mr. Marberger's truck while he himself, being unrestrained and without airbag deployment, would have continued forward into the steering wheel of his vehicle. When his torso contacted the steering wheel of the vehicle, his head continued forward, hinging upon his neck. The third vehicle making a "side-swipe" rear impact would have caused a minor acceleration of Mr. Marberger's vehicle pushing him rearward relative to the vehicle itself. The injuries noted at presentation to the hospital included left forehead contusion and hematoma, traumatic subdural hematoma, paraspinal hematoma, fracture of the T1 vertebrae, nasal fracture, contusion of the left knee, eyelid laceration, and contusions of left and right forearms. Notable negative findings at presentation include: no cervical vertebral fractures, only chronic, degenerative changes; no facial bones fractures, other than the nasal bones; no lower or upper extremity bone fractures; no chest trauma; the liver and spleen, while massively enlarged suffered no trauma; no pelvic bone fractures. Notable incidental findings unrelated to the trauma were massive splenomegaly, with differential diagnosis of polycythemia vera, chronic myelogenous leukemia (CML), or other myeloproliferative disorder. These diseases were differential diagnoses for the cause of the noted splenomegaly, or massive enlargement of ones spleen, and are all cancers that cause increased numbers of different cell types in the body, including red blood cells and/or white blood cells. As part of routine evaluation in this setoff diseases, he had a Hepatitis panel obtained, which was positive for Hepatitis B Core Antigen. This latter test only indicates exposure to Hepatitis at some point in the past but not necessarily active disease. I did not receive the entire panel to review, only the documentation of the Hematologist, Dr. Altman. He also was noted to have mild pulmonary hypertension. This is almost certainly caused by his long history of smoking cigarettes and marijuana.

While being treated at McLeod Regional Medical Center (MRMC), Mr. Marberger was given appropriate and routine post-traumatic care. He did not require operative intervention for any of the injuries listed above other than for his eyelid laceration. He did not receive a tarsorrhaphy however. Both his brain and vertebral injuries would be expected to resolve and he has required no specific follow-up for either of these injures. Likewise, all of the soft tissue injuries and contusions would have healed without residual disability. While in MRMC, Mr. Marberger fell on two occasions. Repeat imaging reports did not indicate worsening of any of the aforementioned injuries, but he did have multiple rib fractures noted on CT of the chest and needed escalation of care briefly for respiratory distress. These fractures were not demonstrated on his reports of the initial CT scans of his chest and more likely than not were a result of his attempts to ambulate without assistance while in the

MW 10JAN25

hospital. I was not provided with the actual imaging studies to review and only was privy to the radiologist reports. If provided, I can comment in more detail on any CT scans of the chest. He has not complained of this injury during any of the follow-up appointments I have reviewed as well.

In summary, all of Mr. Marberger's injuries were sustained from his initial impact with the rear of a semi-truck and none from the secondary collision with the side of his vehicle. All of the injuries were treated appropriately at MRHC and would be expected to have full recovery, except the eyelid laceration. The lack of initial tarsorrhaphy led to desiccation and injury to the eye. The incidental finding of massive splenomegaly and polycythemia versus CML versus other myeloproliferative disorder and eventually primary myelofibrosis and resultant follow-up treatment as well as prognosis are in no way related to his traumatic injuries as well, and in fact was a fortuitous incidental finding that allowed earlier treatment than would have occurred had he not been imaged for trauma.

All of my opinions listed above are provided based on the information I received and reviewed and I believe to a reasonable degree of medical certainty that all of Mr. Marberger's injuries occurred from the first impact and that little to no residual disability should be expected other than the eye injury which was related to lack of tarsorrhaphy treatment early in his hospitalization.

Appendix attached includes:

1. Christopher Watson, MD CV
2. Juris Medicus Fee Schedule
3. Testimony Case List Last 4 Years

*CH WATSON, MD*
CHRISTOPHER WATSON MD                    10 JAN 2025

State of: South Carolina
County of: Richland
The foregoing instrument was acknowledged before me 10 day of January, 2025
Kylie R. Williams
Your Name Here, Notary Public
My Commission Expires 9/6/2032

State of South Carolina
Notary Public
Kylie R. Williams
My Commission Expires 09/06/2032

